IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONCEAL CITY, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-2506-D |
| VS. | § | |
| | § | |
| LOOPER LAW ENFORCEMENT, LLC | § | |
| D/B/A LOOPER LAW ENFORCEMENT | § | |
| SUPPLY, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action for patent infringement and related claims, plaintiff Conceal City, L.L.C. ("Conceal City") moves for a preliminary injunction against defendants Looper Law Enforcement, LLC d/b/a Looper Law Enforcement Supply and Looper Leather Goods Co., Inc. (collectively, the "Looper defendants"), and Steve A. Wiesner ("Steve") and Michael S. Wiesner ("Michael") (collectively, the "Wiesners").[1]  For the reasons that follow,[2] the court grants the motion in part and denies it in part and files a preliminary injunction in accordance with this memorandum opinion and order.

---

[1]Conceal City's preliminary injunction application is before the court under the procedure permitted by Fed. R. Civ. P. 43(c) and is being decided on the papers without an evidentiary hearing. *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

[2]Pursuant to Rule 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

I

The court assumes the parties' familiarity with the background facts and procedural history discussed in the prior opinions of this case. *See Crowell v. Looper Law Enforcement, LLC*, 2011 WL 1515030 (N.D. Tex. Apr. 20, 2011) (Fitzwater, C.J.) (*"Crowell II"*); *Crowell v. Looper Law Enforcement, LLC*, 2011 WL 830543 (N.D. Tex. Mar. 10, 2011) (Fitzwater, C.J.) (*"Crowell I"*). The court adds to the background facts and procedural history what is necessary to understand the grounds for the court's preliminary injunction decision.

Conceal City alleges that the Looper defendants and the Wiesners are liable on three grounds: patent infringement, in violation of 35 U.S.C. § 271; false marking, in violation of 35 U.S.C. § 292; and unfair competition, under Texas law. The parties' dispute involves a holster covered by U.S. Patent No. 5,570,827 (the "'827 patent"). The '827 patent intends to improve upon the inside-the-pants pistol holster. It does so by using stiff leather for the inner and outer layers and extending the layers forwardly and rearwardly to form wings. The wings maximize the flatness of the holster and thereby minimize the bulge of the pistol. The patented holster also permits the user to wear a pager or pager-like device to cover the clip connecting the holster and waistband. From the exterior, only the pager or pager-like device is visible. The intended result of these two improvements is to better conceal the pistol.

Steve invented the holster in dispute and obtained the '827 patent. He distributed the holster, which was at the time fitted for pagers, under the name "Pager Pal." The Looper defendants were the exclusive producers of the Pager Pal and thereby possess the die and implements of production. Steve assigned the '827 patent to the Looper defendants, who

then assigned the patent to plaintiff Conceal City.  Bill Crowell ("Crowell"), on behalf of Conceal City, fitted the holster for cellular telephones and distributed it under the name "CELL PAL."  The Looper defendants continued as the exclusive producers of the Cell Pal. Crowell maintains that the Looper defendants were never authorized to sell, supply, or distribute the holster to others.

Conceal City alleges that the Looper defendants are using the dies and implements of production to produce and supply an infringing holster, despite Conceal City's demand for the return of the materials.[3]  It also asserts that the Wiesners are distributing the infringing holster under the name "Hyde-It Holsters"; are falsely marking the holster on their website as patented; and are passing off the Cell Pal as belonging to the same company as the Hyde-It Holster.  Conceal City seeks a preliminary injunction enjoining defendants from using the production dies; manufacturing, distributing, or selling an infringing holster; and engaging in misleading advertising, such as marking the Hyde-It Holster as related to the '827 patent and advertising that the Wiesners' company is the home of the "Cell/PDA Pal."

---

[3]The court has previously determined that Crowell—not Conceal City—has standing to bring this lawsuit.  *Crowell I*, 2011 WL 830543, at *4.  In *Crowell II*, on the basis of newly-produced evidence, the court concluded that Crowell lacked standing, but it permitted Conceal City to proceed with the lawsuit.  *Crowell II*, 2011 WL 1515030, at *3.

II

The court turns first to Conceal City's motion for preliminary injunction on the basis of patent infringement.[4]

A

Under 35 U.S.C. § 283 a court can "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." *Id.* "A preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)).[5] The decision whether to grant a preliminary injunction is

_____

[4]Although Conceal City seeks a preliminary injunction on three separate claims, it combines its analysis for all three. The court will attempt to separate the arguments and determine whether a preliminary injunction is proper as to each claim.

[5]In deciding whether Conceal City is entitled to a preliminary injunction under 35 U.S.C. § 283, the court applies the law of the Federal Circuit. Under the Federal Circuit's courtesy rule, it is "generally guided by the law of the regional 'circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law.'" *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (quoting *Molins PLC v. Quigg*, 837 F.2d 1064, 1066 (Fed. Cir. 1988)). Although the standard for deciding a preliminary injunction application is procedural, the court applies Federal Circuit law because, in the context of an injunction under § 283, the issue "involves substantive matters unique to patent law." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 n.3 (Fed. Cir. 1998) (recognizing that issuance of preliminary injunction under § 283 is governed by Federal Circuit law but noting that "purely procedural questions involving the grant of a preliminary injunction are controlled by the law of the appropriate regional circuit"); *see also, e.g., Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988) (providing that issuance of injunction under § 283 is governed by Federal Circuit law); *Wireless Agents*, 390 F.Supp.2d at 535 (applying Federal Circuit standard in deciding preliminary injunction motion in patent infringement case).

within the court's discretion. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001); *Intel*, 995 F.2d at 1568. The court is to consider (1) whether Conceal City has demonstrated a reasonable likelihood of success on the merits, (2) whether Conceal City will suffer irreparable harm if an injunction is not granted, (3) whether the balance of hardships tips in Conceal City's favor, and (4) whether, and to what extent, granting the injunction will have a positive impact on the public interest. *See, e.g., Amazon.com*, 239 F.3d at 1350 (citing *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994)). Conceal City must establish both of the first two elements. *See id.* at 1350. To demonstrate a reasonable likelihood of success on the merits, Conceal City must show that it will likely prove the infringement of at least one valid and enforceable patent claim. *See, e.g., Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1201 (Fed. Cir. 2007) (citing *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005)). If defendants raise a substantial question concerning infringement by asserting an infringement defense that Conceal City cannot prove lacks substantial merit, the court should not find that there is a likelihood of success on the merits, and an injunction should not be issued.[6] *See, e.g., AstraZeneca LP v.*

---

[6]There is disagreement in the Federal Circuit about the "substantial question" rule. In *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008), the panel noted that this rule is "in direct conflict with other, earlier statements that the standard is not vulnerability, but likelihood of success on the merits." *Id.* at 1363 (noting that Federal Circuit precedent was developed to match rest of nation, and no other circuit has "substantial question" rule, and while recent Federal Circuit decisions may suggest otherwise, they are not "clearly established precedent" that can overcome earlier decisions, such as *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). According to the *Abbott Laboratories* panel, several prior cases have invoked this rule, including other cases decided during the same year as *Abbott Laboratories. See, e.g., E.I. du Pont de Nemours & Co. v. MacDermid Printing*

*Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010); *Amazon.com*, 239 F.3d at 1350-51.

B

It is well-established that the infringement analysis is bipartite. First, the court ascertains the meaning and scope of the claim. *See, e.g., Amazon.com*, 239 F.3d at 1351; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). Claim construction is a matter of law reserved exclusively for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Second, the court compares the properly construed claim with the accused device. *See, e.g., Amazon.com*, 239 F.3d at 1351; *Vitronics*, 90 F.3d at 1582. This is a factual determination. *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1387 (Fed. Cir. 2002).

When construing a claim, "the words of a claim 'are generally given their ordinary and customary meaning,'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (quoting *Vitronics*, 90 F.3d at 1582). In some cases, the ordinary meaning of a claim term is readily apparent even to lay judges, and claim construction will merely

---

*Solutions, L.L.C.*, 525 F.3d 1353, 1358 (Fed. Cir. 2008); *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1355-56 (Fed. Cir. 2008); *Amazon.com*, 239 F.3d at 1350-51. And despite what the *Abbott Laboratories* panel observed, another panel followed the "substantial question" rule in a later case, *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010). Accordingly, as have other district courts, *see Avery Dennison Corp. v. Alien Technology Corp.*, 626 F.Supp.2d 693, 697-99 (N.D. Ohio 2009), the court will apply the "substantial question" rule in this case.

involve the application of the term's widely accepted meaning. *Id.* at 1314. Dictionaries are useful in those circumstances as an extrinsic source. *Id.* In others, claim construction may require the examination of "sources available to the public that show what a person of skill in the art would have understood [the] disputed claim language to mean." *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

Courts are "to place the claim language in its proper technological and temporal context" by referring to "various forms of intrinsic evidence and, when appropriate, extrinsic evidence." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005). Intrinsic evidence, which includes the claims themselves, the specification, and the prosecution history, is the most significant source in determining the legally operative meaning of disputed claim language. *Id.* "[T]he context in which a term is used in the asserted claim can be highly instructive" and may "provide[] a firm basis for construing the term." *Phillips*, 415 F.3d at 1314. The other claims, whether asserted or unasserted, are also valuable because "claim terms are normally used consistently throughout the patent" and even "[d]ifferences among claims can also be a useful guide." *Id.* The specification is the "single best guide to the meaning of a disputed term," and it may reveal the inventor's intentions as to a special definition or scope of a claim term, which is regarded as dispositive. *Id.* at 1315-16 (quoting *Vitronics*, 90 F.3d at 1582). A "construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs*

*Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).  Additionally, the court should consider the patent's prosecution history, if in evidence, because it may be informative on how the inventor and United States Patent and Trademark Office ("PTO") understood the patent.  *Id.* at 1317.  But it is often less useful than the specification because it is the fruit of negotiations between the inventor and PTO and, as such, lacks the clarity of the final specification.  *See id.*

In their sound discretion, courts may also rely on extrinsic evidence.  *See, e.g., Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005); *Phillips*, 415 F.3d at 1317. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc)).  But while extrinsic evidence may be useful, it is still "less significant than the intrinsic record." *Id.* (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)); *see also, e.g., Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004).

## C

The court addresses first the construction of claim 1 of the '827 patent.[7]  Conceal City

---

[7]This construction, of course, is tentative and is based on the preliminary record.  The court can construe the claims differently at a later stage and on a more complete record.  *See, e.g., Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 n.3 (Fed. Cir. 2003) ("[A] district court can issue 'tentative' or 'rolling' claim constructions when 'faced with construing highly technical claim language on an expedited basis,' such as in a preliminary injunction proceeding[.]") (quoting *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d

alleges that the Hyde-It Holster literally infringes claim 1.   Defendants respond that the

Hyde-It Holster does not read on the '827 patent, and they dispute the construction of three

phrases in claim 1: (1) "pistol compartment," (2) "perimeter line of stitching," and (3)

"collinear" and "forward line of stitching."   The court need only construe the last claim

phrase to decide this preliminary injunction motion and therefore declines to determine

whether the Hyde-It Holster reads on the first and second claim phrase.

Claim 1 can be divided into four sections, describing (1) the holster body, (2) a

forward portion of the holster body, (3) rearward portions of the holster body, and (4) a clip

retainer layer.   As to the holster body, claim 1 provides for:

> a holster body;
> the holster body including an outer layer formed of a flexible
> sheet material;
> an inner layer formed of a flexible sheet material;
> the inner and outer layers being joined by connection means to
> form a pistol compartment;
> the connection means being stitching through the inner and outer
> layers, the connection means including a perimeter line of
> stitching and first and second interior lines of stitching wherein
> the first and second interior sections of stitching being spaced to
> form the pistol compartment therebetween with the inner and
> outer layers and wherein the first interior section of stitching is
> linear;

P. App. 12-13.   The claim describes the placement of the stitching: a *perimeter* line of

stitching and first and second *interior* lines of stitching.   The interior lines of stitching

---

1352, 1361 (Fed. Cir. 2002)); *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d
1216, 1221 (Fed. Cir. 1996) ("[T]he trial court has no obligation to interpret claim[s]
conclusively and finally during a preliminary injunction proceeding.").

delineate the boundaries of the pistol compartment.

Claim 1 then describes the forward portion of the holster body, which is "located below the inner layer top edge and extending forwardly of the pistol compartment and the first interior section of stitching, forming a forward wing." *Id.* at 13. The rearward portions of the holster body are "located below the inner layer top edge and extending rearwardly of the pistol compartment and the second interior section of stitching, forming a rearward wing; with the outer layer having a tab extending above the top edge of the inner layer." *Id.* Thus when viewing the holster with the inside layer on top (i.e., the layer closest to the body when worn), the section spanning from the edge of the holster to the first interior line of stitching form the forward wing on the left, and, on the right side, the section spanning from the second interior line of stitching to the edge form the rearward wing. The outer layer extends up, above the inner layer and has a tab. While the forward portion of the holster body only refers to the forward wing, the rearward portions refer to the rearward wing and the tab.

Claim 1 then describes the clip retainer layer, which contains the disputed language "collinear" and "forward line of stitching":

> a clip retainer layer joined to the tab [of the outside layer] opposite the inner layer;
> . . .
> the clip retainer layer and outer layer being joined by joining means;
> . . .
> with the joining means being stitching through the clip retainer layer and outer layer;
> the joining means including forward and rearward lines of stitching;
> *with the forward line of stitching being collinear with the first*

- 10 -

> *interior section of stitching connecting the inner and outer layers and extending along a forward edge of the clip retainer layer*; and
> the rearward line of stitching being linear and extending along a rearward edge of the clip retainer layer.

*Id.* (emphasis added).

Defendants argue that the '827 patent calls for a forward line of stitching that is collinear with the first interior section of stitching and extends along the forward edge of the clip retainer layer. In determining the meaning of "collinear," defendants present the Merriam-Webster Dictionary definition: "1: lying on or passing through the same straight line; 2: having axes lying end to end in a straight line." Loopers Br. 10-11; Wiesners Br. 10-11. The significance of this contention is found in the fact that the Hyde-It Holster does not have straight stitching that extends from the clip retainer layer to the first interior section. Instead, there are two distinct sections of stitching: stitching to secure the clip retainer layer, and stitching in the first interior section. Conceal City contests this characterization of the claim term, asserting that defendants are adding "continuous" to modify collinear, when it is not part of the claim.

The court interprets claim 1 to require a straight forward line of stitching that extends from the forward edge of the clip retainer layer to the first interior section of stitching. As shown by the definition of collinear, the forward line of stitching must be straight in order to "pass[] through the same straight line." Moreover, in claim 1, the term "extending" means "reaching." *See* Oxford English Dictionary (Oxford Univ. Press, 2d ed. 1989) ("[T]o reach, be continuous, to or towards a certain point[.]"). This indicates that the forward line of

stitching must be continuous from the clip retainer layer to the first interior section of stitching. This forward line of stitching is not merely a hypothetical line to measure whether both the stitching near the clip retainer layer and the first interior section are "passing through the same straight line." This is so because claim 1 indicates that the forward line of stitching is a "line of stitching," not merely a "line." This construction of claim 1 is further supported by contrasting the claim's description of the forward line of stitching to the rearward line of stitching. The rearward line of stitching must "be[] *linear* and extend[] along a *rearward edge of the clip retainer layer*." P. App. 13 (emphasis added). The '827 patent describes a rearward line of stitching that need only be linear, not collinear, and it need only extend along the rearward edge of the clip retainer, not from the clip retainer to the second interior section of stitching. The specification provides no assistance because it uses the same language as the claim. Figs. 1 and 2 support this interpretation because it shows a straight stitching line on the forward side extending from the clip retainer layer to the first interior section, but only two short stitching segments at the rearward side of the clip retainer layer and at the second interior section.

D

Having construed the terms "collinear" and "forward line of stitching," the court next examines whether the Hyde-It Holster literally infringes claim 1.[8] "Literal infringement of

---

[8]Conceal City alleges in its amended complaint that the Hyde-It Holster literally infringes the '827 patent, but it does not assert that the accused device infringes the patent under the doctrine of equivalents. The court therefore will not consider whether the accused device infringes the patent-in-suit under the doctrine of equivalents. *See, e.g., nCube Corp.*

a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Strattec Sec. Corp. v. Gen. Auto. Specialty Co.*, 126 F.3d 1411, 1418 (Fed. Cir. 1997); *see also, e.g., Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) ("To establish literal infringement, 'every limitation set forth in a claim must be found in an accused product, exactly.'") (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). "Where a claim does not read on an accused device exactly, there can be no literal infringement." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989) (collecting cases).

Conceal City has failed to prove that the Hyde-It Holster literally infringes the '827 patent by reading on it *exactly*. Unlike claim 1, the Hyde-It Holster does not have a single, straight forward line of stitching. Instead, there are two short stitching segments—one on the forward side of the clip retainer layer and another on the first interior section—and the stitching near the clip retainer layer is curved, not straight. Although Conceal City correctly notes that "a patentee typically claims broadly enough to cover less preferred embodiments as well as more preferred embodiments," *see Gillette*, 405 F.3d at 1371, the patentee did not

_____

*v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) ("The party asserting infringement [under the doctrine of equivalents] must present '*evidence* and *argument* concerning the doctrine and *each* of its *elements*.' The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.") (emphasis in original) (quoting *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989)); *Wireless Agents*, 390 F.Supp.2d at 535 & n.3 (conducting only literal infringement analysis because plaintiff did not contend infringement under doctrine of equivalents).

do so in this case.  Claim 1 specifically provides for a forward line of stitching that is collinear and extends from the first interior section of stitching to the forward edge of the clip retainer layer.

The court finds that Conceal City has failed to demonstrate a reasonable likelihood of success on the merits because defendants have raised a substantial question regarding infringement that Conceal City has not proved lacks substantial merit.  Accordingly, the court is unable to find that an injunction should be issued on this basis.  *See Amazon.com*, 239 F.3d at 1350 ("[A] movant cannot be granted a preliminary injunction unless it establishes . . . [a] likelihood of success on the merits[.]").

### III

The court now considers whether Conceal City is entitled to a preliminary injunction based on its false marking claim under 35 U.S.C. § 292.[9]

_____

[9]In analyzing this claim, the court examines only the arguments that the Wiesners make in their brief because Conceal City relies on the conduct of the Wiesners, not of the Looper defendants.

The court assumes, and the parties do not dispute, that a preliminary injunction under § 283 is available for false marking claims in order "to prevent the violation of any right secured by patent."  *See Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1360 (Fed. Cir. 2006) (when holding that preliminary injunction for patent marking must be reassessed given vacatur of invalidity judgment, not questioning district court's ability to grant preliminary injunction on this ground and stating that it discerned no flaw in district court's handling of matter).  The court will examine whether to grant a preliminary injunction on this basis under the same four-part test used for patent infringement cases.  As explained *supra* at note 5, the court follows Federal Circuit law.  *Cf., e.g., Mikohn Gaming*, 165 F.3d at 894 n.3 (applying Federal Circuit law for preliminary injunction motions based on § 283).

A

The court examines first whether Conceal City has established a reasonable likelihood of success on its false marking claim.

To establish this claim, Conceal City must prove that it "suffered a competitive injury as a result of a violation of [§ 292(a)]."  *See* § 292(b); *see also Lubber, Inc. v. Optari, LLC*, 2011 WL 4738264, at *8 (M.D. Tenn. Oct. 6, 2011) (holding that plaintiff can pursue a false marking claim under § 292).  Although Conceal City does not directly state whether it has suffered a competitive injury, it does argue under the section of its brief that addresses irreparable harm that "Defendants are trading off the name and the goodwill of Conceal City LLC by false[ly] marking" the Hyde-It Holster with the '827 patent.  P. Br. 20.

Section 292(a) is violated "when an unpatented article is marked with the word 'patent' or any word or number that imports that the article is patented, and such marking is for the purpose of deceiving the public."  *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (interpreting § 292 before 2011 amendment, which made no change that undermines this statement of law); *see also Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) ("The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public.") (also interpreting § 292 prior to the 2011 amendment).  "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true. "  *Id.* (quoting *Clontech Labs.*, 406 F.3d at 1352).  Although intent to deceive is subjective in nature, it is

- 15 -

established by objective criteria. *Clontech Labs.*, 406 F.3d at 1352 (citing *Seven Cases v. United States*, 239 U.S. 510, 517-18 (1916)). "[T]he *fact* of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Id.* (emphasis in original) (quoting *Norton v. Curtiss*, 433 F.2d 779, 795-96 (C.C.P.A. 1970)). "An assertion by a party that it did not intend to deceive, standing alone, 'is worthless as proof of no intent to deceive where there is knowledge of falsehood.'" *Forest Grp.*, 590 F.3d at 1300 (quoting *Clontech Labs.*, 406 F.3d at 1352). "[I]n order to establish knowledge of falsity[,] the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked[.]" *Clontech Labs.*, 406 F.3d at 1352-53; *see also Forest Grp.*, 590 F.3d at 1300. Defendants cannot be held liable under the statute absent proof that they lacked a reasonable belief. *Clontech Labs.*, 406 F.3d at 1353.

Conceal City devotes much of its brief to arguing that it is entitled to a preliminary injunction based on patent infringement. Regarding false marking, it relies on the conclusory assertion that "[t]he evidence presented clearly and convincingly establishes that . . . [the Wiesners] are falsely marking the holster through the reference to the '827 Patent on the website through which it is offered for sale and sold." P. Br. 18. Conceal City offers in evidence a screen shot of the Wiesners' website, universalholsters.com, which twice states that the Hyde-It Holster is "patented" and refers to "US Patent# 5570827" at the bottom of

the page.[10]   P. App. 47-48.   Although Conceal City's argument is lacking, it has also

introduced supporting evidence that Steve had assigned the '827 patent to the Looper

defendants, who then conveyed it to Conceal City.[11]   Because Steve actually sold the '827

patent, the Wiesners cannot have had a reasonable belief that the articles were properly

---

[10]The Wiesners object to this evidence, contending that it lacks the required foundation, fails to comply with Fed. R. Evid. 1002, and is hearsay.  The court disagrees.

First, this evidence is properly authenticated under Fed. R. Evid. 901 by the affidavit of Conceal City's founder, who avers that the screen shot is a "true and correct cop[y] of [the] document[]."  P. App. 4.  This evidence is sufficient "to support a finding that the matter in question is what its proponent claims."  *See* Fed. R. Evid. 901(a).  Second, contrary to the Wiesners' objection, the screen shot satisfies Fed. R. Evid. 1002's requirement of an original to prove the content of a writing.  Under Fed. R. Evid. 1001(3), an original includes any printout if the data are stored on a computer or similar device.  Third, the evidence is not hearsay because it is not being offered to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801(c) (defining "Hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  Conceal City relies on this evidence to show what is depicted on the website, not to prove that what is depicted is true.

[11]Conceal City offers, among other evidence, a copy of the assignment from Steve to the Looper defendants and the assignment from the Looper defendants to Conceal City.  The Wiesners object to these documents on the grounds that both lack the required foundation, fail to comply with Fed. R. Evid. 1002, and are hearsay.  The court disagrees.

First, the evidence is properly authenticated under Fed. R. Evid. 901.  Conceal City's founder avers that the documents are "true and correct copies of the documents involved in my purchase of the '827 patent."  P. App. 4.  This evidence is "sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  Second, the documents satisfy either Fed. R. Evid. 1002 or 1003.  If the documents are printouts from stored computer data, they are originals, according to Fed. R. Evid. 1001(3), and therefore satisfy Fed. R. Evid. 1002.  And if they are duplicates under Fed. R. Evid. 1001(4) because they were reproduced, they are admissible under Fed. R. Evid. 1003 because no genuine question has been raised as to the authenticity of the original or the unfairness of admitting the duplicate.  Third, the documents are not hearsay because they constitute verbal acts.  *See, e.g., Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) ("Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay.").

marked with the patent, and they cannot assert that they did not intend to deceive. Therefore, Conceal City has adequately shown that the Wiesners misrepresented the Hyde-It Holster on universalholsters.com as patented, and that the Wiesners demonstrated knowledge of this falsehood, thereby exhibiting intent to deceive. Accordingly, the court finds that Conceal City has established a reasonable likelihood of success on its false marking claim.

B

The court analyzes second whether Conceal City has shown that it will suffer irreparable harm if the preliminary injunction is not issued. Conceal City posits that the Wiesners are trading off Conceal City's name and goodwill by falsely marking the Hyde-It Holster as patented, and that it is uncertain whether Conceal City will be able to reestablish its goodwill if the Wiesners are permitted to continue their actions pending the trial. To the extent that these arguments are relevant to the false marking claim, Conceal City also contends that infringement will continue unless the court intervenes, citing an affidavit of Daniel B. Bates ("Bates"). According to Bates, when Steve received the lawsuit papers, he told Bates that the company was stolen from him and he would "fight to get it back." P. App. 143.[12] The Wiesners maintain that Conceal City has not established a substantial threat of irreparable harm.[13]

---

[12]Although Conceal City presents other arguments in support of a finding of irreparable harm, the court need not consider them.

[13]The Wiesners object to Conceal City's evidence, contending, *inter alia*, that Conceal City's reference to goodwill is vague and that Steve's statement is hearsay. The court overrules these objections.

The court holds that Conceal City has shown that it will suffer irreparable harm if the preliminary injunction is not granted.  By marking the Hyde-It Holster as associated with the '827 patent, the Wiesners are benefiting from the goodwill of the patent, despite the fact that they no longer own it.  Steve cannot assign the '827 patent to satisfy a debt but still retain the benefits of the patent.  This advertising bears the risk of eroding the reputation and good will of Conceal City.  If Hyde-It Holsters are of lesser quality, consumers may conclude that the Cell Pal, which is actually covered by the '827 patent, is also unsatisfactory.  *See, e.g., Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382-83 (Fed. Cir. 2006) (affirming finding of irreparable harm because, in addition to other reasons, defendant failed to demonstrate that district court erred in finding that plaintiff would lose goodwill without preliminary injunction); *Ne. Lumber Mfrs. Ass'n v. Exp. Pallet & Crating Solutions LLC*, 2011 WL 2580113, at *1 (E.D. Wis. June 28, 2011) (providing, in motion seeking temporary restraining order, that value of trademark might be harmed if falsely marked product did not live up to expectations).  And it will "cause confusion in the marketplace and potential loss [of] customers" who view the website and wrongly assume that this is in the same line and quality as the other products covered by the '827 patent.  *See Ne. Lumber*, 2011 WL

---

First, Conceal City has presented sufficient evidence that it has suffered, and will likely continue to suffer, the loss of goodwill if the Wiesners are not enjoined from their false marking.  *See, e.g., Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1565-66 (Fed. Cir. 1996) (affirming finding of irreparable harm because, in addition to presumption of irreparable harm, plaintiff would lose revenue and goodwill if defendant entered the market).  Second, Steve's alleged statements qualify as party admissions.  *See* Fed. R. Evid. 801(d)(2)(A) (providing that statement "offered against a party" and is "the party's own statement" is not hearsay).

2580113, at *1; *see also, e.g., Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62 (Fed. Cir. 2008) (despite defendants' argument that damages were available for infringement, affirming finding of irreparable harm in preliminary injunction analysis because plaintiff would suffer market share and revenue loss if defendant entered market); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (recognizing that potential loss of market share might be irreparable because, after years of infringement, it might be impossible to restore patentee's exclusive position or protect from customers' established relationship with infringers).

## C

The court considers third whether the balance of hardships tips in Conceal City's favor. The court must "balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *Hybritech*, 849 F.2d at 1457.

After weighing the alleged hardships, the court finds that the balance of hardships favor Conceal City. Conceal City will suffer a substantial hardship if it is required to compete against its own patent, which outweighs the hardship expected to be suffered by the Wiesners. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, ___ F.3d ___, 2011 WL 4834266, at *12 (Fed. Cir. Oct. 13, 2011). The Wiesners' concern that a preliminary injunction will cause them great financial harm is unsupported, particularly considering the scope of a preliminary injunction that the court enters today. The preliminary injunction is narrowly tailored to enjoin the Wiesners from falsely advertising the Hyde-It Holster as being patented

or related to the '827 patent.  The preliminary injunction otherwise permits them to continue marketing and distributing the holster.

### D

Fourth, the court assesses the impact of the preliminary injunction on the public interest.  "[T]he focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech*, 849 F.2d at 1458.

The Wiesners maintain that a preliminary injunction will "stifle competition in the holster market and harm the public," who have "a right to consume goods subject to competition."  Wiesners Br. 21.  This argument lacks force because a preliminary injunction that enjoins false marking only forecloses the false marking, not the distribution, of the Hyde-It Holster.  There is no critical public interest that will be injured by granting a preliminary injunction of the scope in question.

### E

After considering the factors and the relief requested, the court holds that Conceal City has shown that it is entitled to a preliminary injunction barring the Wiesners from advertising that the Hyde-It Holster is patented under the '827 patent or related to the '827 patent.

### F

Pursuant to Fed. R. Civ. P. 65(c), Conceal City must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have

been wrongfully enjoined or restrained." *Id.*; *see also Pharmacia & Upjohn Co. v. Ranbaxy Pharm., Inc.*, 85 Fed. Appx. 205, 215 (Fed. Cir. 2003) (interpreting Rule 65 to "require[] the furnishing of a bond"). Based on the preliminary injunction record, the court rejects the Wiesners' unsubstantiated request for a $1 million bond and sets the bond at $50,000, in cash or with a surety approved by the clerk of court.

IV

Finally, the court turns to Conceal City's request for preliminary injunction on the basis of unfair competition under Texas law.[14]

A

To obtain a preliminary injunction, Conceal City must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that its threatened injury outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006)).[15] Although the decision to grant a preliminary injunction is within the court's

---

[14]As in § III, the court will consider only the arguments asserted by the Wiesners because Conceal City does not base this claim on alleged misconduct by the Looper defendants.

[15]The court applies Fifth Circuit law in deciding whether a preliminary injunction is warranted based on the Texas common law claim of unfair competition. Unlike an injunction pursuant to § 283, *see supra* note 5, which is well-recognized as requiring the application of Federal Circuit law, an injunction under a Texas common law claim of unfair competition

discretion, it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden of persuasion on all four elements.  *See, e.g., Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir.2003); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

B

The first factor is whether Conceal City has demonstrated a substantial likelihood that it will prevail on the merits of its unfair competition claim for passing off.[16]

---

does not raise the same "substantive matters unique to patent law." *See Mikohn Gaming*, 165 F.3d at 894 n.3 & 895 (applying Ninth Circuit preliminary injunction standard when reviewing district court's grant of preliminary injunction based on Nevada common law claim).  A Texas unfair competition claim can arise in circumstances other than in patent-related cases.  *See, e.g., U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App. 1993, writ denied) (noting three types of unfair competition claims, including trade-secret misappropriation and common-law misappropriation).

Moreover, it is undisputed that although Conceal City requests a preliminary injunction based on Texas law, federal law provides the applicable standard for issuance of a preliminary injunction.  *See, e.g., Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (applying Fifth Circuit preliminary injunction test, although injunction request was based on Texas law claim); *Hopkins v. Wells Fargo Bank, N.A.*, 2011 WL 611664, at *2-4 (N.D. Tex. Feb. 18, 2011) (Fitzwater, C.J.) (same).

[16]"The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974).  Three independent causes of action are included within the broad scope of unfair competition: palming off or passing off, trade secret misappropriation, and common law misappropriation. *See U.S. Sporting Prods.*, 865 S.W.2d at 217.  Conceal City asserts only a passing off claim.

Although Texas courts have considered the claims of "palming off" and "passing off" numerous times, they do not consistently identify the name of this cause of action.  The court will use the term "passing off" because its use is supported by Texas cases. *See, e.g., Wissman v. Boucher*, 150 Tex. 325, 332, 240 S.W.2d 278, 281 (1951).

Passing off is the "use or simulation by one person of the name, symbols or devices of a business rival in such a manner as is calculated to deceive and cause the public to trade with the first when they intended to and would otherwise have traded with the second." *McCarley v. Welch*, 170 S.W.2d 330, 332 (Tex. Civ. App. 1943, no writ). "The doctrine [of unfair competition] rests on the broad equitable principle that no person may sell or advertise his own business or goods as those of another." *Id.* To establish this claim, it is not necessary to prove that the conduct was intended or that actual deception resulted; "it is sufficient that such deception would naturally and probably result from the acts charged." *Id.*; *see also Line Enters., Inc. v. Hooks & Matteson Enter., Inc.*, 659 S.W.2d 113, 117 (Tex. App. 1983, no writ). "But either actual or probable deception must be shown, a mere possibility of deception [is] not . . . enough." *McCarley*, 170 S.W.2d at 332; *see also Line Enters.*, 659 S.W.2d at 117 n.2.

Conceal City maintains generally that "the evidence makes a clear case of unfair competition through passing off the Hyde-It Holster as the [Cell Pal] . . . . Consistent misrepresentations are routinely made that there is a single source and sponsor for the holster in that the same company has simply renamed the holster." P. Br. 18. Conceal City relies on an affidavit of Bates, who avers that Mike told him he was the son of the inventor (i.e., Steve), and that since the holster had been invented, it has gone by Pager Pal, Cell Pal, Conceal City, and now Hyde-It Holster.[17] According to Bates, Mike also stated that the

---

[17]The Wiesners object to Bates's affidavit on the grounds that Bates lacks personal knowledge and the statements within the affidavit lack foundation and are hearsay. The court

Hyde-It Holster was the same as the Cell Pal. Conceal City also cites to the declaration of Glenn A. Wade ("Wade"), who avers that he spoke to a Hyde-It Holster salesman who identified himself as the son of the inventor (i.e., Mike) and claimed that the holster was previously named Pager Pal and Cell Pal and that they are part of the same company.[18] Mike also allegedly stated that the holsters had the same design.[19]

_____

overrules the objections.

    First, "Evidence to prove personal knowledge may . . . consist of the witness' own testimony," Fed. R. Evid. 602, and Bates avers that the affidavit includes information "personally known to [him]." P. App. 125. Conceal City has also offered in evidence a photograph of Bates speaking with Mike. As such, Conceal City has demonstrated that Bates has personal knowledge of the contents in his affidavit and provided the required foundation. Second, the reported statements by Mike are not hearsay because they are party admissions. *See* Fed. R. Evid. 801(d)(2)(A).

    [18]The Wiesners object to Wade's declaration and the photographs included within the declaration, asserting that Wade lacks personal knowledge, and the contents of the declaration are hearsay, lack foundation, and fail to comply with Fed. R. Evid. 1002. The court overrules the objections.

    First, Conceal City has adequately established that Wade has personal knowledge, as shown by the contents of Wade's declaration and the photograph of Wade and Mike at the gun show where the conversation took place. *See* Fed. R. Evid. 602. Conceal City has therefore provided the required foundation for Wade's declaration. Second, Mike's statements are not hearsay because they recount party admissions that are not hearsay. *See* Fed. R. Evid. 801(d)(2)(A). Third, the photographs are properly authenticated under Fed. R. Evid. 901 by Wade's declaration, in which he avers that the photographs are "true and correct" copies of the photographs. P. App. 136-37. For purposes of this motion, this evidence is "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The photographs also satisfy the requirement of Fed. R. Evid. 1002 of an original, as "original" is defined in Fed. R. Evid. 1001(3).

    [19]Conceal City also seeks a preliminary injunction barring the Wiesners from representing that their website, universalholsters.com, is the home of the Cell Pal. The court declines to consider this request because Conceal City has not supported this assertion with sufficient facts. The court is unable to find that Conceal City intends to make this request or whether Conceal City has possibly confused the Wiesners' actions with those of another person who, according to Conceal City, maintains a website called concealmentconcepts.com

- 25 -

The court finds that Conceal City has established a substantial likelihood that it will prevail on the unfair competition claim. As shown by Conceal City's evidence, the Wiesners have misrepresented the Cell Pal as belonging to the same company as the Hyde-It Holster, and they have done so in order to deceive the public and entice them to purchase the Hyde-It Holster. It is clear that deception will naturally and probably result from these misrepresentations. "[N]o person may sell or advertise his own business or goods as those of another." *McCarley*, 170 S.W.2d at 332.

C

The second factor is whether Conceal City has shown that there is a substantial threat of irreparable harm absent an injunction.

"[A]n injury is irreparable only if it cannot be undone through monetary remedies . . . . The absence of an available remedy by which the movant can later recover monetary damages . . . may . . . be sufficient to show irreparable injury." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (per curiam) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985) (internal quotations and footnotes omitted)).

Conceal City asserts that the Wiesners are trading off Conceal City's name and goodwill by passing off the Cell Pal as part of the Wiesners' business. It contends that goodwill is not easily subject to valuation, and that it is uncertain whether it will be able to

─────────────────────

and allegedly refers to the Hyde-It Holster as the "CellPal."

reestablish its goodwill if the court permits the unfair competition to continue until this lawsuit is tried.

The court finds that Conceal City has established a substantial threat of irreparable harm absent a preliminary injunction. By telling potential customers that the Hyde-It Holster and the Cell Pal are part of the same company and have the same design, the Wiesners are appropriating the Cell Pal's goodwill and diverting possible customers from Conceal City. *See, e.g., TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F.Supp.2d 763, 771 (N.D. Tex. 2009) (Fitzwater, C.J.) (recognizing that plaintiff would face substantial threat to its reputation and goodwill without preliminary injunction). This promotes consumer confusion even though there is no truth to this assertion. *See Paulsson*, 529 F.3d at 313 (finding that potential customers might have been confused about who was providing services under trademark); *TGI Friday's*, 652 F.Supp.2d at 771 (finding that defendants were promoting customer confusion by holding out their restaurant as one of plaintiff's, although untrue). As a result, Conceal City suffers loss of control over the quality of its name and product because the reputation of Conceal City and the Cell Pal is now linked with the Hyde-It Holster. *See Paulsson*, 529 F.3d at 313 (finding that customer confusion led to plaintiff's loss of control of the trademark); *TGI Friday's*, 652 F.Supp.2d at 771 ("This consumer confusion means that [plaintiff] no longer possesses control over its valuable trademarks or its reputation."). This injury is irreparable, cannot be remedied through monetary damages, and may increase in time since gun shows are held virtually every weekend, according to Conceal City. *See Paulsson*, 529 F.3d at 313; *TGI Friday's*, 652 F.Supp.2d at 771-72.

D

The third factor is whether the threatened injury to Conceal City outweighs the threatened harm to the defendants. After weighing the interests asserted by Conceal City and the Wiesners, the court finds that this consideration weighs in favor of Conceal City because an injunction will protect it from a substantial threat to its reputation and goodwill. *See id.* at 771-72. Moreover, a preliminary injunction based on unfair competition will be narrowly tailored to prohibit the Wiesners only from asserting a relationship between the Hyde-It Holster and the Cell Pal. Any harm that the Wiesners may suffer from this prohibition merits little weight because they cannot complain about being barred from making false statements that Conceal City's goods are associated with their company. *See McCarley*, 170 S.W.2d at 332 ("[N]o person may sell or advertise his own business or goods as those of another."). And any harm to the Wiesners that may result from this preliminary injunction will actually support the finding that Conceal City will face substantial threat to its goodwill absent an injunction. *See TGI Friday's*, 652 F.Supp.2d at 773 (finding that if plaintiff's marks are so integral to defendants' business that non-use would cause defendants' asserted prediction of closure, this would actually support plaintiff's claim that it will face substantial threat to its reputation and goodwill absent preliminary injunction).

E

The fourth factor is whether a preliminary injunction will not disserve the public interest. The court holds that no asserted public interest will be disserved by the issuance of a preliminary injunction that bars only the misrepresentation that the Hyde-It Holster and

Cell Pal are related. Contrary to the Wiesners' contention, a preliminary injunction on these grounds will not stifle competition because it would still permit the sale of the Hyde-It Holster. It will also protect Conceal City's interest in safeguarding its patent. *Cordis Corp. v. Bos. Scientific Corp.*, 99 Fed. Appx. 928, 935 (Fed. Cir. 2004) (noting public interest in upholding patentee's exclusive rights).

                                                    F

        After evaluating the factors and relief requested, the court finds and concludes that a preliminary injunction is necessary to protect Conceal City. In the preliminary injunction filed today, the court enjoins the Wiesners from representing that the Cell Pal and Hyde-It Holster are related to each other, whether by representing that the same company distributes the holsters or that the Cell Pal was renamed as the Hyde-It Holster.

        The $50,000 bond that the court has already set will also cover this portion of the injunctive relief granted. *See, e.g., Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (holding that amount of security "is a matter for the discretion of the trial court," and "the court 'may elect to require no security at all'") (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).

\* \* \*

For the reasons explained, the court grants in part and denies in part Conceal City's motion for preliminary injunction. A preliminary injunction is being filed contemporaneously with the filing of this memorandum opinion and order.

**SO ORDERED.**

November 15, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 30 -