IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONCEAL CITY, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-2506-D |
| VS. | § | |
| | § | |
| LOOPER LAW ENFORCEMENT, LLC | § | |
| D/B/A LOOPER LAW ENFORCEMENT | § | |
| SUPPLY, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION

In this action for patent infringement and related claims, the court construes disputed claim limitations of U.S. Patent No. 5,570,827 ("the '827 patent"), which is held by plaintiff Conceal City, L.L.C. ("Conceal City"). The '827 patent relates to an inside-the-pants holster for carrying and concealing a pistol. The invention claims an improved, concealed pistol holder that disguises the carrying clip through use of an attached pager or pager-like unit, and that incorporates layers that form wings that, in combination with relatively stiff material forming the layers, minimize the bulge of the holster.

I

Conceal City sues defendants Looper Law Enforcement, LLC d/b/a Looper Law Enforcement Supply and Looper Leather Goods Co., Inc. (collectively, the "Looper defendants"), and Steve A. Wiesner and Michael S. Wiesner (collectively, the "Wiesners").[1]

---

[1]The court assumes the parties' familiarity with the background facts and procedural history discussed in prior opinions of this case, and therefore limits its discussion to what is

Conceal City alleges that the Looper defendants and the Wiesners are liable on three grounds: patent infringement, in violation of 35 U.S.C. § 271; false marking, in violation of 35 U.S.C. § 292; and unfair competition, under Texas law.

The parties dispute the construction of language in claim 1 of the '827 patent. The court need only construe the disputed claim limitations. *See, e.g., Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

II

The construction of patent claims is a matter reserved exclusively for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The court begins with the words of the claim. *See, e.g., Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001). "[T]he words of a claim 'are generally given their ordinary and customary meaning,'" which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. When "the

---

necessary to understand the present decision. *See Crowell v. Looper Law Enforcement, LLC*, 2011 WL 830543 (N.D. Tex. Mar. 10, 2011) (Fitzwater, C.J.); *Crowell v. Looper Law Enforcement, LLC*, 2011 WL 1515030 (N.D. Tex. Apr. 20, 2011) (Fitzwater, C.J.); *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 2011 WL 5557421 (N.D. Tex. Nov. 15, 2011) (Fitzwater, C.J.) ("*Conceal City I*").

meaning of a claim term as understood by persons of skill in the art is . . . not immediately apparent . . . the court looks to 'those sources available to the public that show what a person of skill in the art would have understood [the] disputed claim language to mean.'" *Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (quoting *Innova/Pure Water*, 381 F.3d at 1116).

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* "The claims, of course, do not stand alone. Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (citations omitted) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978, 979 (Fed. Cir. 1995)).

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics,* 90 F.3d at 1582). "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317.

"In addition to consulting the specification, [the] court 'should also consider the patent's prosecution history, if it is in evidence.'" *Id.* (quoting *Markman*, 52 F.3d at 980).

"Although [the Federal Circuit has] emphasized the importance of intrinsic evidence in claim construction, [it has] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman*, 52 F.3d at 980). "However, while extrinsic evidence 'can shed useful light on the relevant art,' . . . it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id.* (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). "[E]xtrinsic evidence in general" is viewed "as less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

### III

Before addressing the disputed claim language, the court will generally describe the '827 patent.

The '827 patent recites a holster that consists of three pieces of "flexible sheet material": an "inner layer," an "outer layer," and a "clip retainer layer." Ds. App. '827 patent col.2, ll.59-63, col.3, l.17.[2] The inner and outer layers—which comprise the compartment for the pistol—are joined by a connection means: stitching. The lines of stitching that connect the inner and outer layers and form the compartment include "a perimeter line of stitching" and "first and second interior sections of stitching." *Id.* at col.2, l.66 to col.3, l.5. The two interior sections of stitching form the sides of the compartment that contains the

---

[2]Because the parties failed to sequentially number the pages of their appendices, the court will cite the patent by column and line.

- 4 -

pistol—the first interior section being toward the front of the holster, and the second interior section being toward the rear.

The outer layer has a tab that extends above the top of the inner layer. The clip retainer layer connects to this tab on the outer side of the outer layer, and it serves as the location for attaching the user's pager or pager-like device. The clip retainer layer is connected to the outer layer by two lines of stitching: a forward line of stitching along the forward edge of the clip retainer layer, and a rearward line along the rearward edge.

The parties' claim construction dispute focuses on two issues: whether the pistol compartment is completely enclosed at the bottom so as not to accommodate a pistol barrel longer than the compartment; and whether the clip retainer layer's forward line of stitching extends to connect with the first interior section of stitching.

IV

The court first addresses the construction of "compartment" and "a perimeter line of stitching." Essentially, the parties' dispute regarding this claim language is whether the pistol compartment must be closed along the bottom or whether the claim language allows an opening in the bottom to accommodate a pistol barrel longer than the compartment.

A

Claim 1 recites, in relevant part:

> A pistol holster, comprising:
> a holster body;
> the holster body including an outer layer formed of a flexible sheet material;
> an inner layer formed of a flexible sheet material;

>> the inner and outer layers being joined by connection means to form a pistol *compartment*;
>> the connection means being stitching through the inner and outer layers, the connection means including *a perimeter line of stitching* and first and second interior lines of stitching wherein the first and second interior sections of stitching being spaced to form the pistol *compartment* therebetween with the inner and outer layers[.]

Ds. App. '827 patent col.2, l.57 to col.3, l.5 (emphasis added). Defendants maintain that "compartment" means "a space with a closed end." May 30, 2012 Joint Claim Construction Statement 2 ("Jt. Cl. Constr. Statement"). Conceal City asserts that "compartment" means a space that is "sufficiently enclosed to hold a pistol; but does not require closure at the end opposite the opening at the top." *Id.*

The parties' proposed constructions of "compartment" depend on the construction of "a perimeter line of stitching." The claim language states that the "compartment" is formed by a connection means that includes "a perimeter line of stitching." *See* Ds. App. '827 patent col.3, l.l. The parties dispute whether "a perimeter line of stitching" means "one or more" lines of stitching around the perimeter, or only one line. This dispute is central to determining whether the "compartment" is completely enclosed at the bottom, because the parties assume that it would require more than one perimeter line of stitching for there to be an opening in the bottom of the compartment.[3] Defendants, seeking to construe

---

[3]As a hypothetical example of how to form an opening in the bottom of the compartment, the holster could have two perimeter lines of stitching that do not connect at the bottom of the compartment, thus leaving a hole at the bottom that a pistol barrel could fit through.

- 6 -

"compartment" as completely enclosed, contend that "a perimeter line of stitching" means only one line of stitching that is continuous around the perimeter of the inner and outer layers. *See* Jt. Cl. Constr. Statement 3. Conceal City posits that "a perimeter line of stitching" means "one or more lines of stitching along a portion or portions of an outer boundary or boundaries forming, in part, the pistol compartment." *Id.* at 2-3.

B

To support their construction of "compartment" as completely enclosed at the bottom, defendants rely on the following: dictionary definitions of "compartment" and "perimeter"; claim language; embodiments depicted in the specification; and the '827 patent's prosecution history.

1

The dictionary definition of "compartment" is not limited to a completely enclosed space. The definition of "compartment" includes a separate room, section, chamber, or space, or a section, space, or part into which an area or enclosed space is divided or subdivided. *See* Webster's II New Riverside University Dictionary 289 (1984) (defining "compartment": "One of the sections or spaces into which an area is subdivided."; "A separate room, section, or chamber."). Defendants rely on the *Merriam-Webster* definition that a "compartment" is "one of the parts into which an enclosed space is divided." Ds. Br. 8;[4] Merriam-Webster's Collegiate Dictionary 252 (11th ed. 2007) ("a separate division or

---

[4]In this memorandum opinion, "P. Br." and "Ds. Br." mean Conceal City's and defendants' opening claim construction briefs, respectively.

section"; "one of the parts into which an enclosed space is divided"). But this definition merely means that a compartment is "a division of an enclosed space . . . . [T]he compartment itself need not be enclosed." *Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*, 2006 WL 1050629, at *5 (D. Minn. Apr. 20, 2006) (interpreting same *Merriam-Webster* definition in holding that "compartment" does not mean completely enclosed space). The dictionary definition of "compartment" does not therefore require that the bottom of the holster be completely enclosed.

2

The phrase "a perimeter line of stitching" does not limit the compartment to being completely enclosed because the indefinite article "a" is generally construed as plural in claims such as this one that employ the open-ended, transitional term "comprising." *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("[T]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'") (citation omitted). This rule of construction is not absolute—it is appropriate to construe "a" to mean one and only one when the claim language and specification indicate as much. *See Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011) (holding that "*a* bit line" meant "*one* bit line" because the claim's plain language distinguished when an element was plural—"*a number of* control gates" versus "*a* bit line"). Here, the sole indication that "a perimeter line of stitching" means only one line of stitching is the drawing of the preferred

embodiment depicted in Figs. 1, 3, 4, and 5.[5] The Federal Circuit has "repeatedly warned" against confining claims to the specific embodiments depicted in the specification. *Phillips*, 415 F.3d at 1323.

Also weighing against narrowly construing the indefinite article "a" is its antecedent, "including." The claim language recites: "the connection means *including a* perimeter line of stitching[.]" Ds. App. '827 patent col.2, l.67 to col.3, l.l. The Federal Circuit construes "including" as an indication that the subsequent list of items is open-ended. *See Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1344-45 (Fed. Cir. 2003)); *Amgen*, 314 F.3d at 1345 (explaining that "including" and "comprising" have the same meaning—"that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim").

Defendants contend last that the limitation "a perimeter line of stitching" is an aspect of what made the holster novel over prior art. They cite prosecution history showing that the phrase "a perimeter line of stitching" was added through an examiner's amendment. *See* Ds. App. June 28, 1996 Examiner's Amendment ¶ 2. Even assuming that defendants are correct that "a perimeter line of stitching" is a novel aspect of the '827 patent,[6] the inclusion of that

---

[5] Apart from the figures depicted, the specification describes that "the inner and outer layers have congruent curved perimeters," and states that the stitching joining the inner and outer layers "includes a perimeter line." Ds. App. '827 patent col.2, ll.7-9, col.1, l.65.

[6] The phrase "a perimeter line of stitching" was included in the original patent application, but the patent prosecutor omitted it during the process of amending the claim

phrase as a limitation in the claim does not address whether to interpret it as singular or plural.

3

Because the weight of the intrinsic and extrinsic evidence is against construing "compartment" and "a perimeter line of stitching" to limit the compartment to being completely enclosed at the bottom, the court construes "compartment" to mean "a space that holds a pistol."

The court construes "a perimeter line of stitching" to mean "one or more lines of stitching along the perimeter."

C

The parties' proposed constructions of "a perimeter line of stitching" also raises a related issue: whether the line or lines of stitching must be continuous around the entire perimeter.

1

Defendants maintain that "a perimeter line of stitching" means a continuous line of stitching around the entire perimeter. *See* Jt. Cl. Constr. Statement 3. Conceal City contends that "a perimeter line of stitching" "need not be positioned around an entire perimeter of the

---

language to comply with the examiner's initial comments. *See* Ds. App. Aug. 11, 1995 Patent Appl. 7; Ds. App. May 17, 1996 Am. Patent Appl. 2. The examiner's amendment simply put that language back into the claim. *See* Ds. App. June 28, 1996 Examiner's Amendment ¶ 2. And when commenting on the holster's being novel compared to prior art, the examiner only mentioned the collinear aspect of the holster's stitching. *See id.* at ¶ 3.

holster or perimeter of the inner and outer layers." *Id.*

2

The claim language recites that "stitching" is the connection means joining the inner and outer layers. *See* Ds. App. '827 patent col.2, ll.64-67. The connection means includes "a perimeter line of stitching." *Id.* at col.3, l.l. Although there must be a line or lines of stitching along the perimeter, there is no intrinsic or extrinsic evidence demonstrating that the stitching must extend unbroken around the perimeter.

The claim language that refers to the perimeter line of stitching does not include the description "extending along the edge" that is used to describe the stitching that joins the clip retainer layer to the outer layer. *See id.* at col.3, ll.33-36. Such language indicates that the stitching *along the edge of the clip retainer layer* must be continuous. There is no such language describing the perimeter line of stitching.

Furthermore, because the court has construed "a perimeter line of stitching" to mean "one or more," *see supra* § IV(B)(3), this construction allows for multiple, separated lines of stitching along the perimeter. The court notes that, although there can be separate lines of stitching along the perimeter, and thus portions of the perimeter could have no stitching, the claim language limits the connection means joining the inner and outer layers to being stitching. *See* Ds. App. '827 patent col.2, ll.66-67.

3

The court holds that the claim language "a perimeter line of stitching" does not require a continuous line of stitching extending along the entire perimeter.

V

The court next construes "the forward line of stitching being collinear," and the related disputed phrases "extending along a forward edge of the clip retainer layer" and "the rearward line of stitching being linear." Jt. Cl. Constr. Statement 4-6.  The construction of these phrases determines whether claim 1 is limited to holsters where the forward line of stitching and the first interior section of stitching connect as one continuous straight line of stitching.

A

The relevant language from claim 1 provides:

> the clip retainer layer and outer layer being joined by joining means;
> . . .
> the joining means including forward and rearward lines of stitching;
> with *the forward line of stitching being collinear with the first interior section of stitching* connecting the inner and outer layers and extending along a forward edge of the clip retainer layer; and the rearward line of stitching being linear and extending along a rearward edge of the clip retainer layer.

Ds. App. '827 patent col.3, ll.21-22, 29-36 (emphasis added).  Defendants construe "the forward line of stitching being collinear with the first interior section of stitching" to mean one continuous straight line of stitching that includes the forward line of stitching and extends through the first interior section of stitching.  *See* Jt. Cl. Constr. Statement 5. Conceal City maintains that "collinear" means the two lines of stitching lie along the same imaginary straight line, but that claim 1 does not require the lines to connect.  *Id.* at 4-5.

B

The court holds that the forward line of stitching of the clip retainer layer and the first interior section of stitching must lie along the same imaginary straight line, but that the lines of stitching need not be connected.[7]

1

The claim language demonstrates that the forward line of stitching and first interior section of stitching need not connect. The key language is "the *forward line of stitching being collinear with the first interior section of stitching* connecting the inner and outer layers *and extending along a forward edge of the clip retainer layer*." Ds. App. '827 patent col.3, ll.31-34 (emphasis added). The claim language recites that the forward line of stitching "extend[s]," but states only that it extends "along a forward edge of the *clip retainer layer*." *Id.* at col.3, ll.33-34. There is no language indicating that the forward line extends to the first interior section of stitching. The language "extending along a forward edge of the clip retainer layer" describes the forward line of stitching, not the first interior section.[8]

---

[7]The court recognizes that this construction conflicts with the claim construction included in the court's preliminary injunction decision. But as the court explained in that opinion, its claim constructions were "tentative," and it was permitted to construe the claims differently at a later stage of the litigation. *See Conceal City I*, 2011 WL 5557421, at *8 n.7 (citing *Sofamor Danek Grp., Inc. v. DePuy–Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("[T]he trial court has no obligation to interpret claim[s] conclusively and finally during a preliminary injunction proceeding.")). Following further review, and absent the time constraints involved when deciding a preliminary injunction application, the court concludes that the construction reached today is the correct one.

[8]That the "extending" language describes the forward line of stitching and not the first interior section is evidenced by the claim's identical description of the rearward line of

Therefore, this claim language does not mean that the first interior section of stitching extends along the forward edge of the clip retainer layer.

2

The description of the forward line's being "collinear" does not require that the forward line and the first interior section of stitching connect. "Collinear" is defined as "lying on or passing through the same straight line." Ds. Br. 11 (quoting Merriam-Webster's Collegiate Dictionary 244). This dictionary definition supports the construction that the forward line and the first interior section must lie on the "same straight line," but it does not address whether these collinear lines of stitching must be one connected line. The definition of "collinear" allows for lines that lie along the same imaginary straight line.

The court's construction accounts for the claim language's description of the forward line as "collinear" and the rearward line as merely "linear." Ds. App. '827 patent col.3, ll.31, 35. The rearward line is merely "linear," meaning straight, and not "collinear," because the rearward line does not lie along the same straight imaginary line as the second interior section of stitching. The rearward line is not described as "collinear" because the second interior section of stitching is not intended to be straight or in line with the rearward line of stitching. *See id.* at col.2, ll.4-6. According to the specification, "Preferably, the first interior section of stitching is linear, *while the second interior section of stitching is curved* to be spaced more widely from the first interior section of stitching at a top end and at a bottom

---

stitching as "extending along a rearward edge of the clip retainer layer." *Id.* at col.3, ll.35-36.

end." *Id.* at col.2, ll.3-6 (emphasis added).  In other words, the second interior section of stitching is curved to fit a pistol's trigger.  In sum, the clip retainer layer's forward line of stitching is on the same imaginary line as the first interior section of stitching, but the rearward line cannot be similarly "collinear" with the curved second interior section of stitching.

3

Defendants rely on the embodiments included in the specification that show a continuous straight line of stitching that connects the forward line of stitching and the first interior section of stitching.  Although the embodiments depicted in Figs. 1 and 3 reflect one continuous line of stitching, it is settled that claim language "may embrace 'different subject matter than is illustrated in the specific embodiments in the specification.'" *Phillips*, 415 F.3d at 1323 (quoting *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005)).  The claim language encompasses embodiments with one straight, continuous line of stitching, but the language is not similarly limited.

Defendants also rely on the '827 patent's prosecution history.  In explaining his reasons for allowing the patent, the examiner commented that none of the prior art taught the invention, "particularly the forward line of stitching being collinear with the first interior section of stitching as claimed."  Ds. App. June 28, 1996 Examiner's Amendment ¶ 3. Defendants may be correct that the collinear aspect of the stitching was a central reason the examiner approved the patent, but the importance of the lines's being collinear is irrelevant for determining whether the collinear lines of stitching must connect.  On that issue, the

- 15 -

prosecution history is silent.

4

In sum, because the claim language and other intrinsic and extrinsic evidence do not require the forward line of stitching and the first interior line of stitching to connect and be one continuous line, the court will not interpret claim 1 to impose such a limitation. The court construes "the forward line of stitching being collinear with the first interior section of stitching" to mean that the lines of stitching must lie along the same straight imaginary line, but are not required to connect.

November 16, 2012.

                                                SIDNEY A. FITZWATER
                                                CHIEF JUDGE